Dennis NAGEL and Darlene Nagel, et al., Plaintiffs,

v.

ADM INVESTOR SERVICES, INC., et al., Defendants.

Duane STEINER, et al., Plaintiff,

v.

ADM INVESTOR SERVICES, INC., et al., Defendant.

Wilson FARM, et al., Plaintiff,

v.

ADM INVESTOR SERVICES, INC., et al., Defendant.

Richard SCHRUMPF, et al., Plaintiff,

v.

ADM INVESTOR SERVICES, INC., et al., Defendant.

Phillip W. BROWN, et al., Plaintiff,

v.

ADM INVESTOR SERVICES, INC., et al., Defendant.

Nos. 96 CV 2675, 96 CV 2741, 96 CV 2879, 96 CV 2972 and 96 CV 5215.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 11, 1998.

Adam K. Hollander, Mayer, Brown & Platt, Chicago, IL, Joel J. Bellows, Laurel G. Bellows, Nicholas P. Iavarone, Christopher L. Gallinari, Bellows & Bellows, Rebecca J. Wing, Chicago, IL, for Plaintiffs.

Timothy C. Klenk, Richard J. Rappaport, Alison C.B. Laing, Amy Beth Manning, Ross & Hardies, P.C., Chicago, IL, for ADM Investor Services, Inc.

Mark M. Lyman, Henry Karl Becker, Daniel G. Dolan, Jr., John D. Ruark, Henderson, Becker & Lyman, Chicago, IL, Jeffry Mark Henderson, Patrick Gerard King, Henderson and Lyman, Chicago, IL, for Brighton Commodities, Inc.

James L. Fox, Abramson & Fox, Chicago, IL, Kenneth M. Snodgrass, Jr., James Roland Grebe, Goldsworthy, Fifield & Hasselberg, Peoria, IL, for Oberbeck Feed Co.

## MEMORANDUM AND ORDER

MANNING, District Judge.

The following motions are before the court: (1) defendant ADM Investor Services' motion to dismiss all claims in plaintiffs' consolidated

complaint (# 49–1); (2) ADMIS's motion to strike (# 52–1); (3) defendant Oberbeck Feed's motion to strike paragraphs 4 and 5 and Counts XV and XVI of plaintiffs' amended complaint (# 45–1); (4) Oberbeck's motion to dismiss (# 45–2); and (5) defendant Brighton Commodities and Agro Systems' joint motion to dismiss plaintiff's consolidated complaint (# 50–1).

For the reasons stated below, the court's September 29, 1997 order is modified. The confusing nature of the amended complaint makes it impossible for the court to resolve the threshold question of whether the hedge-to-arrive contracts that are the subject of this case are cash-forward or futures contracts at this time. This distinction impacts the motions to dismiss because cash forward contracts are outside the ambit of the Commodity Exchange Act. *See* 7 U.S.C. § 1a(11). Thus, if the hedge-to-arrive contracts are cash forward contracts, the plaintiffs' Commodity Exchange Acts claims fail. To forestall a potential additional round of briefing, however, we will consider the motions to dismiss filed by the defendants to the extent presently possible.

Oberbeck's motion to dismiss for lack of venue is denied. Its motion to dismiss for lack of subject matter jurisdiction and its motion to dismiss the plaintiffs' supplemental state law claims are denied without prejudice. Because the amended complaint fails to comply with Fed.R.Civ.P. 8, ADMIS's motion to dismiss is granted and the amended complaint is dismissed in its entirety without prejudice. ADMIS's motion to strike, therefore, is denied as moot. Finally, in light of our disposition of ADMIS and Oberbeck's motions to dismiss, Brighton and Agro's joint motion to dismiss is denied without prejudice.

The plaintiffs are granted leave to replead within 28 days of the date of the entry of this order, consistent with their Rule 11 obligations. If the plaintiffs do not replead by this date, or the date of any extensions, the dismissals shall convert to dismissals with prejudice.

## I. Background

This case arises from hybrid grain contracts, which are also known as hedge-to-arrive contracts, for the sale and purchase of grain between grain producers and grain elevators. The plaintiffs' 16–count amended complaint is before the court. The plaintiffs allege violations of RICO, 18 U.S.C. § 1961 *et seq.* against ADMIS, Agro, and Brighton (Counts I—III), the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, against ADMIS, Brighton, Oberbeck, Staley, DeLong, and Demeter (Count IV), ADMIS, Agro, and Brighton (Count VI), and Oberbeck and Staley (Count VII), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count VIII) against ADMIS, Agro, and Brighton. In addition, they include claims based on state contract law against Oberbeck, Staley, DeLong, and Demeter (Counts IX and XIII), breach of fiduciary duty against ADM, Agro, and Brighton (Counts X and XV), Oberbeck, Staley, DeLong, and Demeter (Count XI), and ADMIS, Agro, Brighton, and Oberbeck (Count XVI), fraud against ADMIS, Agro, and Brighton (Count XII), and negligence against Oberbeck, Staley, DeLong, and Demeter (Count XIV).[1]

## II. Discussion

### A. Defendant Oberbeck Feed's Motion to Strike and Dismiss

Oberbeck argues that: (1) this court lacks jurisdiction over Count IV, which asserts violations of the Commodities Exchange Act and is the sole federal claim against Oberbeck; (2) due to the lack of federal subject matter jurisdiction, supplemental jurisdiction over the plaintiffs' state law claims is improper; (3) venue is improper as to Oberbeck; and (4) the plaintiffs' state law counts fail to state a claim for which relief can be granted. Oberbeck seeks to strike Paragraphs 4 and 5 and Counts XV and XVI (breach of fiduciary duty) and to dismiss all other counts of plaintiffs' amended complaint directed against it for lack of jurisdiction.

In order to state a claim against Oberbeck under the Commodities Exchange Act, the

---

**1.** The proceedings against Demeter, DeLong, and Staley have been stayed pending arbitration. *See* Orders of September 26, 1997 and September 29, 1997.

hedge-to-arrive contracts that are the subject of this case must be futures rather than cash-forward contracts. *See* 7 U.S.C. § 1a(11) (contracts involving the "sale of any cash commodity for deferred shipment or delivery" are not "futures contracts" as defined by the Act). In order to make this determination, we need to evaluate, at a minimum, the plaintiffs' complaint. We cannot do this because, for the reasons discussed below, we are dismissing it pursuant to Fed.R.Civ.P. 8.

As Oberbeck's motion to dismiss turns on only a few paragraphs of the complaint, however, it is possible to analyze it despite the deficiencies in the complaint discussed below. In order to conserve the parties' and the court's resources and prevent another potential round of briefing, the court will address Oberbeck's contentions that the plaintiffs failed to plead damages sufficiently to state a claim under the Commodities Exchange Act and that venue is improper despite the fact that we have not yet determined whether the hedge-to-arrive contracts are futures contracts or not. With this in mind, for the following reasons, Oberbeck's motions to dismiss for lack of subject matter jurisdiction, to dismiss the plaintiffs' supplemental state law claims, and to strike Paragraphs 4 and 5 and Counts XV and XVI are denied without prejudice, and its motion to dismiss for lack of venue is denied.

### 1. Oberbeck's Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

█ We assume that Oberbeck's motion to dismiss for lack of subject matter jurisdiction

is based on Fed.R.Civ.P. 12(b)(1). Count IV of the plaintiffs' complaint contains the only federal claim against Oberbeck and alleges violations of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* First, as noted above, Oberbeck argues that the hedge-to-arrive contracts at issue in this case are cash forward contracts rather than futures contracts and thus are exempt from the Act. If this is true, the plaintiffs cannot state a claim under the Commodities Exchange Act against Oberbeck. Due to the defects with the plaintiffs' complaint discussed below, this issue will have to wait for another day.

Second, Oberbeck contends that we lack subject matter jurisdiction over Count IV in any event because the plaintiffs have failed to allege that they suffered actual damages as required by Section 25 of the Commodity Exchange Act, 7 U.S.C. § 25(a)(1)(A-D).[2] Oberbeck also appears to be alleging that the plaintiffs' complaint is defective because it does not include damages in a specific dollar amount. Finally, Oberbeck claims that the plaintiffs cannot cure their defective complaint because the types of damages identified by the plaintiffs are not "actual damages" within the meaning of the Commodity Exchange Act.

In response, the plaintiffs contend that jurisdiction is proper, arguing that the Commodities Exchange Act is applicable. They also assert that specificity is not required when pleading damages. In addition, they point to five types of actual damages purportedly alleged in the complaint:

**2.** Section 25(a) provides:

(a) Actual damages; actionable transactions; exclusive remedy

(1) Any person (other than a contract market, clearing organization of a contract market, licensed board of trade, or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person—

(A) who received trading advice from such person for a fee;

(B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity);

or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—(i) an option subject to section 6c of this title (other than an option purchased or sold on a contract market or other board of trade); (ii) a contract subject to section 23 of this title; or (iii) an interest or participation in a commodity pool; or

(D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

(1) "[T]he lost value of [plaintiffs'] crops, what they would have been cash forwarded for if not for Defendants' violations, less what was ultimately received for the grain after the July 1996 rally was concluded" (Plaintiffs' Opposition at 12);

(2) "Out-of-pocket ... fees charged by Agro and/or Brighton for advising Plaintiffs to enter into the off-exchange HTA contracts and the related on-exchange spread transactions. Complaint ¶ 58." (*id.* at 12–13);

(3) "Out of pocket ... losses incurred by [plaintiffs] in connection with the on-exchange spread transactions that their trading advisors urged them to enter into Complaint ¶ 60." (*id.* at 13);

(4) Attorneys' fees and costs (*id.* at 13); and

(5) Damages measured by the benefit of the bargain losses, as opposed to out-of-pocket losses. (*id.* at 13–14).

Rule 8 does not require plaintiffs to plead damages with particularity. Instead, it requires plaintiffs to include "a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded." Fed.R.Civ.P. 8(a). In other words, the federal rules do not require claimants to set out in detail the facts upon which they base their damages claims. Nevertheless, plaintiffs must include either direct or inferential allegations concerning all material elements necessary for recovery under the chosen legal theory. *See Glatt v. Chicago Park Dist.*, 847 F.Supp. 101, 103 (N.D.Ill.1994). Thus, the complaint must contain allegations establishing that they have suffered damages as a result of Oberbeck's conduct.

For the reasons stated above, we will assume for the purposes of Oberbeck's motion that the Commodities Exchange Act is applicable. With that in mind, as well as the notice pleading standard of Rule 8, the court turns to an assessment of the damages pleaded by the plaintiffs. With respect to category I damages (the lost value of plaintiffs' crops, *i.e.*, what they would have been worth if not for the defendants' alleged wrongdoing, less what was ultimately received for the crops), Oberbeck claims that there is no causal relationship between Oberbeck and plaintiffs' alleged injuries because the complaint fails to allege an act or omission by Oberbeck which damaged the plaintiffs. Oberbeck also points out that most of the allegations regarding damages in Count IV are directed at the "defendants" and do not necessarily relate to it.

When construed in the light most favorable to the plaintiffs, Count IV of the amended complaint does contain allegations relating to Oberbeck's alleged link to the plaintiffs' claimed damages sufficient to withstand a motion to dismiss because it includes allegations specifying Oberbeck's allegedly wrongful conduct. *See* Amended Complaint Count IV ¶ 92. Accordingly, the court concludes that the plaintiffs have pleaded category I damages adequately as to Oberbeck.

With respect to category II and III damages, Oberbeck correctly notes that the claimed damages do not correspond to the cited paragraphs of the complaint. The plaintiffs purportedly base category II damages—out-of-pocket fees charged by Agro and/or Brighton for advising Plaintiffs to enter into the off-exchange HTA contracts and the related on-exchange spread transactions—on paragraph 58 of the amended complaint. Paragraph 58, however, states that the plaintiffs, reasonably relying upon the misrepresentations and omissions of material fact alleged in their complaint, agreed to enter into a consulting agreement with Brighton/Agro and agreed to write HTA contracts through Oberbeck. The plaintiffs purportedly base category II damages—out of pocket losses incurred in connection with the on-exchange spread transactions that plaintiffs' trading advisors urged them to enter into—on allegations in paragraph 60 of the amended complaint. Paragraph 60, however, states that, as a result of the misrepresentations and omissions of material facts alleged in the complaint, the Nagels, Steiners, and Schrumphs executed agreements and opened commodity accounts with ADMIS and began trading to enhance the price for their HTA contracts.

It is too much of a stretch to get from the language of the complaint to the damages claimed by plaintiffs. Thus, we agree with

Oberbeck that the plaintiffs have failed to plead category II or III damages adequately. However, the plaintiffs may be able to amend their complaint as to these damages. At this stage in the proceedings and in light of our ruling regarding ADMIS' motion to dismiss, leave to amend will further judicial efficiency and is, therefore, granted.

■ According to the plaintiffs, category IV damages are the out-of-pocket expenses incurred in opposing Oberbeck's attempts to foreclose upon the loss positions in their HTA accounts. Thus, category IV damages appear to consist of attorneys' fees and costs. Oberbeck claims that these claimed damages are not "actual damages" under the Commodities Exchange Act. In support of this argument, Oberbeck cites to *Anspacher & Assoc., Inc. v. Henderson*, 854 F.2d 941, 948 (7th Cir.1988), and *Cresswell v. Prudential–Bache Securities, Inc.*, 675 F.Supp. 106, 108 (S.D.N.Y.1987), and analogizes to Securities Act cases. The plaintiffs' response to Oberbeck's attorneys' fees argument consists of complete silence.

The plaintiffs had an opportunity to respond to Oberbeck's attorneys' fees argument and chose not to do so. The failure to brief this issue is especially notable because of the apparent dearth of apposite authority addressing whether attorneys' fees are "actual damages" under the Commodities Exchange Act. We decline to research and develop the plaintiffs' arguments for them. Due to the plaintiffs' failure to present argument regarding whether attorneys' fees are within the purview of "actual damages" allowable under the Commodities Exchange Act, the court will not further consider this issue.

Finally, Oberbeck challenges the plaintiffs' contention that they may receive benefit of the bargain losses, as opposed to out-of-pocket losses. Because we have found that the plaintiffs have pleaded some damages adequately and, therefore, that the plaintiffs have stated a federal claim (assuming that the hedge-to-arrive contracts are within the purview of the Commodities Exchange Act), it is unnecessary to reach this argument at this time.

## 2. Oberbeck's Motion to Dismiss Based on Venue

7 U.S.C. § 25(c), the venue provision of the Commodities Exchange Act, and 28 U.S.C. § 1391(b), the general federal venue provision, control venue over the plaintiffs' claims against Oberbeck. 7 U.S.C. § 25(c) is the broader of these two provisions. It provides that: "[a]ny action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs." In contrast, 28 U.S.C. § 1391(b), which applies to civil cases where jurisdiction is not founded solely on diversity of citizenship, provides, in pertinent part, that these cases "may, except where otherwise provided by law, be brought only in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated ...." As 7 U.S.C. § 25(c) is more expansive, we shall confine our discussion to that section.

In their memorandum opposing the motion to dismiss, the plaintiffs allege that Oberbeck engaged in futures trading before the Chicago Board of Trade. The venue paragraph in their amended complaint, however, does not specifically mention Oberbeck. Amended Complaint ¶ 8. Instead, it includes a catch-all venue allegation, which provides that "[v]arious acts as hereinafter alleged occurred in Cook County, Illinois, and futures contracts referred to herein were executed on the Chicago Board of Trade." *Id.* The plaintiffs appear to intend to include Oberbeck in this catch-all venue allegation.

Oberbeck claims that the plaintiffs have failed to establish that venue is proper. Specifically, Oberbeck argues that the plaintiffs have failed to allege facts relating to any transaction involving Oberbeck that occurred in Cook County or the Northern District of Illinois. Oberbeck also directs our attention to an affidavit attached to its reply memorandum in support of its motion to dismiss. This affidavit, signed by Robert Luitjohan, a vice-president of Oberbeck, states that the plaintiffs who filed suit against Oberbeck grow

their grain in Madison County or the counties contiguous with it, Oberbeck did not solicit business from these plaintiffs, and Oberbeck maintained commodity customer trading accounts with brokers in St. Louis, Missouri and Bloomington, Illinois. Oberbeck characterizes this affidavit as proving that Oberbeck neither resides in nor has transacted business in this district. It admits in its reply memorandum, however, that its brokers entered trades for its account through the Chicago Board of Trade.

We note that Oberbeck elected to submit the Luitjohan affidavit with its reply brief, despite the fact that it argued venue was improper in its motion to dismiss. This prevented the plaintiffs from responding to the affidavit. Arguments may not be presented for the first time in a reply brief. *See Kastel v. Winnetka Board of Education*, 946 F.Supp. 1329, 1335 (N.D.Ill.1996). Nevertheless, we will consider the affidavit as Oberbeck raised its venue argument in its motion to dismiss, despite the fact that Oberbeck's strategy in submitting the affidavit with its reply memorandum prevented the plaintiffs from submitting an affidavit in opposition.

This leaves the court with: (1) a complaint which fails to allege that Oberbeck "is found, resides, or transacts business" in this judicial district or that "any act or transaction constituting the violation" occurred in this district, as required by 7 U.S.C. § 25(c); (2) an assertion in the plaintiffs' opposition to the motion to dismiss that Oberbeck engaged in futures trading before the Chicago Board of Trade; (3) Oberbeck's affidavit denying that it transacted business in this judicial district; and (4) Oberbeck's admission in its reply memorandum that its brokers, who are located outside this judicial district, entered trades for Oberbeck's account with the Chicago Board of Trade.

■ The plaintiff bears the burden of establishing that venue is proper. *See, e.g., Zughni v. Pena*, 851 F.Supp. 300, 302 (N.D.Ill.1994). On a motion to dismiss for improper venue under Rule 12(b)(3), a court takes all allegations in the complaint as true, unless contradicted by the defendant's affidavits. *Id.* A court may also examine facts outside the complaint in order to determine whether venue is proper. *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebs-*

*geselischaft MbH*, 699 F.Supp. 669, 670 (N.D.Ill.1988). When ruling on a motion to dismiss under Rule 12(b)(3), the court must resolve the factual conflicts in the parties' submissions in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor. *National Hydro Systems v. Summit Constructors, Inc.*, 731 F.Supp. 264, 265 (N.D.Ill.1989).

■ The plaintiffs have failed to establish that venue over Oberbeck is proper, as the venue allegations in the complaint do not even mention Oberbeck. In the Luitjohan affidavit, Oberbeck denies that venue in this district is improper. In contrast with the statements in the Luitjohan affidavit, however, Oberbeck concedes in its reply memorandum that its brokers entered trades for Oberbeck's account with the Chicago Board of Trade. In other words, Oberbeck concedes that its agents conducted trades on its behalf in Chicago. These facts convince the court that, while the plaintiffs' complaint may not properly allege venue as to Oberbeck, the plaintiffs should have an opportunity fully and fairly to present their contentions regarding venue as to Oberbeck. Accordingly, Oberbeck's motion to dismiss for lack of venue is granted, with leave for the plaintiffs to replead within 28 days of the date of the entry of this order.

### 3. Plaintiffs' State Law Claims

■ Oberbeck argues that jurisdiction over the plaintiffs' state law claims is improper because the court lacks jurisdiction over the plaintiffs' federal claims under the Commodities Exchange Act. Because the court cannot fully address whether subject matter jurisdiction is proper at this time, Oberbeck's motion to dismiss the plaintiffs' supplemental state law claims due to lack of federal jurisdiction is denied without prejudice.

Oberbeck also raises a host of conclusory challenges to the plaintiffs' pleading of their state law claims. These arguments feature sweeping criticisms of the plaintiffs and their complaint but do not include any citations to authority or specific discussion of the state claims' alleged flaws. Because this portion of Oberbeck's motion to dismiss is deficient, it is denied without prejudice.

**B. ADMIS's Motion to Dismiss All Claims in Plaintiffs' Consolidated Complaint**

With respect to ADMIS, the plaintiffs have alleged claims under RICO (Counts I, II, and III), the Commodities Exchange Act (Counts IV—VI), and the Illinois Consumer Fraud and Deceptive Practices Act (Count VIII). They also include counts for breach of fiduciary duty (Counts X, XV—XVI) and fraud (Count XII). ADMIS seeks dismissal of these claims under Fed.R.Civ.P. 8, 9(b) and/or 12(b)(6). For the reasons set forth below, we grant ADMIS' motion to dismiss the plaintiffs' complaint pursuant to Fed. R.Civ.P. 8, but deny the motion insofar as it seeks dismissal with prejudice. We note that, in the interests of clarity, we are striking the entire complaint as striking the portions relating to ADMIS would not further the goal of improving the complaint's lucidity.

As discussed above, the decision to strike the complaint means that we cannot resolve the threshold question of whether hedge-to-arrive-contracts are cash forward or futures contracts at this time. The plaintiffs and defendants disagree on this point, which is critical as cash forward contracts are outside the ambit of the Commodity Exchange Act. *See* 7 U.S.C. § 1a(11). Thus, a finding that the hedge-to-arrive contracts are cash forward contracts would warrant dismissal of all of the plaintiffs' Commodity Exchange Acts claims. Resolution of this issue, however, requires consideration of the factual allegations in the plaintiffs' complaint as well as the parties' arguments. Because the court has stricken the plaintiffs' complaint, determination of this issue will have to wait for another day.

To set the stage for our discussion of Rule 8 and the complaint, we provide the following summary of the arguments advanced by ADMIS regarding the complaint's alleged shortcomings:

- First, ADMIS argues that the plaintiffs' complaint violates Fed.R.Civ.P. 8 because it is confusing and prolix.
- Second, ADMIS argues that the plaintiffs' complaint violates Fed.R.Civ.P. 9 because it is conclusory and fails to specify the actions taken by the various defendants.
- Third, ADMIS argues that the plaintiffs have failed to: (a) demonstrate their standing to bring a RICO claim by alleging RICO injury; (b) include allegations demonstrating their standing to bring a § 1962(a) claim; (c) properly allege conduct or participation in the conduct of an enterprises' affairs under § 1962(c); (d) properly allege a conspiracy under § 1962(a); and (e) properly allege a pattern of racketeering activity.
- Fourth, ADMIS argues that the court should reject the plaintiffs' respondeat superior RICO claims because the Seventh Circuit does not recognize such a claim and the plaintiffs have failed to allege an agency relationship giving rise to a respondeat superior claim.
- Fifth, ADMIS seeks dismissal of the plaintiffs' Commodities Exchange Act claims under Fed.R.Civ.P. 12(b)(6), claiming that the plaintiffs have failed to allege damages properly and cannot recover for violations of the CFTC rules and regulations because there is no private right of action.
- Sixth, ADMIS argues that the plaintiffs' respondeat superior Commodities Exchange Act claims should be dismissed because the plaintiffs have failed to allege a Commodities Exchange Act claim under Fed.R.Civ.P. 9(b) or 12(b)(6) or an agency relationship that could support respondeat superior liability for ADMIS.
- Seventh, ADMIS claims that the plaintiffs have failed to state a claim under Fed.R.Civ.P. 12(b)(6) under the Illinois Consumer Fraud and Deceptive Practices Act or for fraud because they have failed to allege any specific misrepresentations or deceptive acts or practices by ADMIS, any intent on the part of ADMIS or any other entity, reliance by specific plaintiffs on specific ADMIS representations, and injury and damages.
- Eighth, ADMIS argues that the plaintiffs have failed to state a state law claim for breach of fiduciary duty because they have not alleged a duty owed to them by ADMIS or damages from the alleged breach of fiduciary duty.

We begin and end our analysis of these arguments with Fed.R.Civ.P. 8. ADMIS claims that the plaintiffs' 16–count, 93–page amended complaint violates Fed.R.Civ.P. 8 because it is neither short nor plain. They also characterize the amended complaint as confusing and disjointed, and contend that it does not allow the defendants or the court to understand what claims the plaintiffs are alleging.

■ Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2), (e)(1). Compliance with these provisions ensures that the defendants and the court understand whether the plaintiffs have alleged a valid claim and if so, what it is. *Vicom, Inc. v. Harbridge Merchant Services,* 20 F.3d 771, 775 (7th Cir.1994); *Richmond v. Nationwide Cassel, L.P.,* 52 F.3d 640, 645 (7th Cir.1995). Confusing complaints make it difficult for the defendant to file a responsive pleading and difficult for the court to conduct orderly proceedings. *Vicom, Inc. v. Harbridge Merchant Services,* 20 F.3d at 776. Thus, under Rule 8, plaintiffs must present a complaint with " 'clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of what it is the plaintiff asserts." *Id.* at 775, *citing Jennings v. Emry,* 910 F.2d 1434, 1436 (7th Cir.1990). Rule 8 does not, however, require plaintiffs to include elaborate factual recitations in a complaint. *McTigue v. City of Chicago,* 60 F.3d 381, 382–83 (7th Cir.1995).

Here, the pleading style adopted by the plaintiff makes it virtually impossible to ascertain which defendants are responsible for which allegedly wrongful acts or to determine whether the plaintiffs have stated a cause of action against the various defendants. The plaintiffs' practice of grouping defendants together in the complaint and their decision to renumber each count starting at paragraph 1 further adds to the confusion. In addition, the plaintiffs' memorandum in opposition to ADMIS's motion to dismiss does not help matters. Specifically, the plaintiffs do not respond to each argument by pointing to paragraphs of the complaint which address the alleged flaws identified by ADMIS and citing relevant case law.

Instead, they generally assert, among other things, that their complaint is specific enough and that they need not plead facts which may be adduced through discovery. They also contend that less specificity is required because numerous, complicated transactions are at issue. Finally, they contend that, if they had to plead the particulars of each transaction relating to ADMIS, the complaint would be hundreds of pages long.

The plaintiffs' arguments regarding the sufficiency of their complaint are unconvincing and miss the mark. The complexity of a case does not grant plaintiffs a dispensation from the pleading rules. *See Jennings v. Emry,* 910 F.2d at 1435–36. Moreover, there is a difference between pleading extensive facts and pleading with sufficient specificity and clarity to allow the defendants to understand the claims asserted against them and the court to determine whether the complaint states a claim against a specific defendant.

The court also declines to resolve ADMIS' motion in the only way presently possible—by combing the complaint searching for allegations that respond to the motion to dismiss or inferring responses to ADMIS' arguments from the plaintiffs' response to the motion to dismiss. In short, based on the current complaint and the plaintiffs' opposition to the motion to dismiss, the court cannot meaningfully analyze ADMIS' motion to dismiss. Accordingly, ADMIS' motion to dismiss is granted without prejudice. The plaintiffs may replead within 28 days of the date of the entry of this order. However, they are admonished that, if their second amended complaint does not cure the deficiencies identified by the court in this order, they may not get another bite at the apple. *See Vicom, Inc. v. Harbridge Merchant Services, Inc.* 20 F.3d at 776.

### C. Brighton and Agro's Joint Motion to Dismiss Plaintiff's Consolidated Complaint for Lack of Jurisdiction

According to Brighton and Agro's joint motion to dismiss, Brighton is an introducing broker but Agro is not. Instead, Agro is an agricultural consulting firm that provides accounting, tax, and marketing services to

farmers in central and downstate Illinois, as well as surrounding areas.

Brighton and Agro contend that dismissal of the plaintiffs' amended complaint is warranted because: (1) the plaintiffs have failed to include allegations regarding damages; (2) the amended complaint fails to satisfy Fed. R.Civ.P. 9(b); (3) the plaintiffs have failed to differentiate between Brighton and Agro; (4) the plaintiffs have failed to satisfy Fed. R.Civ.P. 8 by identifying the securities laws which Brighton and Agro allegedly violated; (5) the plaintiffs have failed to allege a violation of 18 U.S.C. § 1962(a), (c) or (d); and (6) the court should not exercise supplemental jurisdiction over the breach of fiduciary duty claims against Brighton and Agro and, in any event, plaintiffs' claim that Brighton and Agro may be held liable for breach of fiduciary duty is conclusory and unsupported by any allegations showing that a fiduciary relationship existed between Brighton, Agro, and any of the plaintiffs.

The plaintiffs' allegations against Brighton and Agro appear to suffer from many of the infirmities regarding the allegations directed at ADMIS and Oberbeck. Due to our ruling with respect to ADMIS's motion to dismiss, however, we shall not discuss Brighton and Agro's arguments in detail at this time, and Brighton and Agro's motion to dismiss is denied without prejudice.

### D. ADMIS and Oberbeck's Motions to Strike

Both ADMIS and Oberbeck ask the court to strike Counts XV (breach of fiduciary duty—the Nagels) and XVI (breach of fiduciary duty—the Steiners) as duplicative of Count X (breach of fiduciary duty). The plaintiffs oppose Oberbeck's request but do not address ADMIS's request. They assert that the factual predicates for Counts XV and XVI are "stated nowhere else in the Complaint, and so the causes of action are not duplicative." Opposition to Oberbeck's motion to dismiss at 16–17.

The motion to strike Counts XV and XVI is denied as moot as the court has stricken the plaintiffs' entire complaint. The court feels constrained to note, however, that the plaintiffs' rationalization as to why it needs three separate fiduciary counts flows from its method of organizing the complaint. The court expects the plaintiffs to take this into account if they prepare a second amended complaint.

Both ADMIS and Oberbeck also seek to strike portions of the complaint pursuant to Fed.R.Civ.P. 12(f). ADMIS takes issue with allegations relating to litigation pending against it in other districts and entities who are not parties to this case and seeks to strike these allegations as impertinent, immaterial, and redundant. Oberbeck's motion to strike paragraphs 4 and 5, which appears to be directed at paragraphs 4 and 5 of the "jurisdiction and venue" section of the complaint, is in a similar vein. These paragraphs list various "relevant non-party co-conspirators" and "relevant non-party grain elevators." ADMIS and Oberbeck's motions to strike are moot based on the court's decision to dismiss the complaint under Fed.R.Civ.P. 8. Accordingly, they are denied without prejudice.

### III. Conclusion

For the reasons discussed above: (1) ADMIS's motion to dismiss (# 49–1) is granted, and the amended complaint is dismissed in its entirety without prejudice; (2) ADMIS's motion to strike (# 52–1) is denied without prejudice; (3) Oberbeck's motion to strike paragraphs 4 and 5 and Counts XV and XVI of plaintiffs' amended complaint (# 45–1) is denied without prejudice; (4) Oberbeck's motion to dismiss (# 45–2) is granted to the extent that it seeks dismissal for lack of venue and denied without prejudice to the extent that it seeks dismissal for lack of jurisdiction and dismissal of the plaintiffs' supplemental state law claims; and (5) Brighton and Agro's motion to dismiss the plaintiffs' complaint (# 50–1) is denied without prejudice.

The plaintiffs are granted leave to replead within 28 days of the date of the entry of this order, consistent with their Rule 11 obligations. If the plaintiffs do not replead by this date, or the date of any extensions, the dismissal shall convert to a dismissal with prejudice.

The defendants shall answer or otherwise plead in response to any amended complaint within 28 days after it is filed. If any defen-

dant moves to dismiss the second amended complaint and wishes to argue that the hedge-to-arrive contracts are cash forward contracts rather than futures contracts, it shall file a separate memorandum addressing this issue. The court directs all defendants to coordinate their efforts and seek to adopt or join in pleadings filed by other parties as necessary to ensure that any motions to dismiss or memoranda regarding the hedge-to-arrive contracts are non-duplicative.